UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 24-cr-291 (JDB) |
| THOMAS EUGENE TATUM, | : | |
| Defendant. | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE

The United States of America, by and through the undersigned Assistant U.S. Attorney, respectfully asks this Court to deny in part Defendant Thomas Eugene Tatum ("Defendant")'s motion to modify conditions of release. *See* ECF No. 28. The Defendant asks this Court to modify his conditions of release to allow for travel to Baltimore, M.D. to prepare for trial and to travel to Washington, D.C. in order to attend a press conference on January 6, 2025 and the presidential inauguration on January 20, 2025. *Id*. The government does not object to the Defendant visiting Baltimore for trial preparation (and does not believe that travel is currently barred by the Defendant's release conditions). The government does oppose the Defendant's proposed visits to the District of Columbia for events unrelated to his pending trial, as he continues to present a danger to the D.C. community, including the law enforcement officers who defended the Capitol on January 6, 2021 and continue to serve the citizens of the District.

### BACKGROUND

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election. During the attack, rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and resulting in hundreds of injured officers and even multiple deaths. As

1

discussed in previous filings, the Defendant joined rioters on the Lower West Plaza in menacing uniformed officers of both the Metropolitan Police Department (MPD) and United States Capitol Police (USCP) as the officers tried desperately to keep a sea of rioters from overrunning the Capitol Building. *See* ECF No. 1-1. As alleged in the superseding indictment in this case, the Defendant's conduct included assaulting officers in a temporary police line on the Lower West Plaza with a flagpole, working in concert with other rioters to drive officers from the broken police line into the corner of the plaza, verbally threatening officers and instructing other rioters to seize officers' helmets, batons, and heads, and poking his flagpole at officers. *See* ECF Nos. 1-1, 25. After officers were forced to abandon the Lower West Plaza, the Defendant climbed to the Lower West Terrace, where security camera footage and footage taken by other rioters captured him entering the tunnel at the center of the Lower West Terrace. *See* ECF No. 1-1. The Defendant then joined other rioters in using his weight in an attempt to push through the police line inside the tunnel and gain entry into the Capitol Building. *Id.*

As a result of his conduct on January 6, 2021, the Defendant is now charged by indictment with seven counts, including: Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, violation of 18 U.S.C. § 111(a)(1) and (b); Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D);

and Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F). ECF No. 25.

## ARGUMENT

### I. Applicable Authority

Under the Bail Reform Act, if a judicial officer determines that release under two standard conditions (not committing crimes and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions. 18 U.S.C. §§ 3142(b), (c)(1). In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The Court is authorized to impose "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(xiv).

In determining appropriate conditions of release, the judicial officer considers factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g) ("Section 3142(g) factors"). The judicial officer may amend a release order "at any time." 18 U.S.C. § 3142(c)(3).

### II. The Court Should Not Modify Defendant's Release Conditions

The Defendant asks the Court to modify his conditions of release to allow him to travel to both Baltimore, M.D. and Washington, D.C., with the visits to Baltimore intended to facilitate trial

preparation with his attorney and the trips to the District of Columbia intended to allow for attendance at a "Official J6 Pardon Press Conference" on January 6, 2025 and the presidential inauguration on January 20, 2025. ECF No. 28 at 1. The government does not oppose the Defendant's proposed travel to Baltimore and believes that travel is already authorized under his current release conditions, provided the Defendant provides notice in advance of his travel to the Pretrial Services Agency in the Northern District of Mississippi. *See* ECF No. 11 at 3.

However, the government does oppose the Defendant's requested trips to Washington, D.C. The Defendant is already subject to the "least restrictive" combination of conditions necessary to ensure the safety of the community. 18 U.S.C. § 3142(c)(1)(B). As part of the Court's current release conditions, the Defendant was not required to post bond, and is not subject to home detention, a curfew, or GPS monitoring; instead, he must submit to supervision by Pretrial Services, and cannot possess firearms or use alcohol excessively. ECF No. 11 at 2-3. The Defendant was also authorized to travel to locations within the United States outside of his home district in Mississippi, provided he gives prior notice to Pretrial Services in the Northern District of Mississippi, but was restricted from returning to the District of Columbia (the scene of his alleged crimes in this case) for purposes other than matters relating to his court case, Pretrial Services business, or meetings with his attorney. *Id*.

The restriction on unauthorized travel to the District is well-reasoned, given the Defendant's allegedly violent conduct on January 6, 2021 and the Court's need to ensure public safety. The Defendant now seeks to return to D.C. for two different events, both of which are political in nature and neither of which relate to a court hearing, a Pretrial Services requirement, or a meeting with his lawyer (who is based out of Baltimore, M.D.). In support of this request, the Defendant claims that he seeks to attend these events as a journalist, and that prior to his arrest in

this case, he traveled to or resided in D.C. regularly for "more than three years" and "there were no incidents." Def. Mot. at 1. The Defendant also claims that the government never objected to these prior trips to D.C. *Id.* at 2. First, the Defendant's claim of journalistic intent is unpersuasive given the Defendant's previous characterization of his journalism. Specifically, while testifying under oath as a defense witness in *United States v. Brian Mock*, the Defendant claimed that he was acting as investigative journalist on January 6, 2021. *See United States v. Mock*, 21-cr-444, Trial Tr. at 60 (June 22, 2023). In light of the Defendant's assaultive conduct at the Capitol on January 6, 2021, the Court should have no confidence that any of Tatum's proposed acts of purported journalism at the Capitol will ensure the safety of the community and the officer victims of January 6, 2021. Second, the Defendant's claim of prior incident-free conduct is inaccurate, as the government has previously disclosed[1] the police report for the Defendant's arrest on May 16, 2023, which occurred after he engaged in a physical altercation with a female counter-protestor at one of the "nightly prayer vigil" events referenced in his motion. Def. Mot. at 1. Similarly, the Defendant's claim that the government "had no objections" to his previous visits to D.C. is unfounded, given the Defendant had not been charged or arrested at the time of those visits, and was therefore not subject to any restrictions on his travel. Regardless, the last organized political event the defendant attended in Washington, D.C., spiraled into a full-scale riot during which the Defendant allegedly committed his charged crimes, including a violent felony committed against uniformed MPD and USCP officers. The Defendant is now seeking to return to D.C. for two political events highly reminiscent of the event that led to his pending charges, the later of which will occur on the very same Capitol Grounds where he assaulted and menaced law enforcement

---

[1] Via initial case specific discovery on July 31, 2024. Per the police report and associated paperwork disclosed in discovery, the Defendant's arrest for misdemeanor simple assault and misdemeanor destruction of property stemmed from a prayer vigil held on May 14, 2023 outside of the D.C. Jail. The Defendant was not subsequently charged in D.C. Superior Court.

5

officers four years earlier. Many of the same officers will be at the Capitol on January 20, 2025 and they will be tasked with doing the same thing they were tasked with on January 6, 2021 – trying to control a crowd to protect the nation's capital. Allowing the Defendant to return to Washington, D.C., and specifically to the Capitol building, could put him face to face with the victim officers that he attacked four years ago and place him in the same circumstance in which he already demonstrated a flagrant disregard for the law. Given the Court's obligation to public safety in weighing the imposition and modification of release conditions, there is no basis for modifying the Defendant's release conditions to allow for the demanded trips into D.C..

The Defendant points to *United States v. Charter*, 20-cr-135, in support of his motion, claiming that Charter was permitted to "live and roam freely" in D.C. despite facing charges of assault and "destroying a historic statute" stemming from June 2020. Def. Mot. at 2. The Defendant's reliance on *Charter* is misplaced. First, Charter was a resident of the District of Columbia; as a result, the court's decision to not bar Charter from the jurisdiction where he lived is consistent with 18 U.S.C. § 3142(g), given expelling Charter from D.C. and potentially rendering him homeless would assuredly not have represented the least restrictive conditions necessary to ensure public safety. *See* 20-cr-135, ECF No. 7 and Minute Order of October 7, 2020. Secondly, Charter was not "free to roam" in D.C., given his release conditions were modified in October 2020 to include a stay away provision barring Charter from returning to multiple geographic areas that included a public park where he committed one of his assaults. *See Id.; see also* 20-cr-135, ECF No. 15 at 2-3. The same modifications by the Court also restricted Charter from leaving his home in D.C. without the court's permission, unless he was attending medical appointments in Virginia. *Id*. Given the defendant in *Charter* was physically barred from visiting the scene of one of his crimes and for a period of time faced far more onerous restrictions on his

6

movement than those placed on the Defendant, the case does not support the Defendant's requested modifications, and the Defendant's motion should be denied.

## **CONCLUSION**

For the reasons described above, the United States respectfully requests that this Court to deny the Defendant's motion to modify condition of release.

                                                Respectfully submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney
                                                D.C. Bar No. 481052

By:    */s/*_____
        SAMUEL WHITE
        Assistant United States Attorney
        NC Bar 44908
        601 D St., NW
        Washington, D.C. 20001
        (202) 431-4453
        Samuel.white@usdoj.gov