**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Case No. 1:24-cr-291 |
| ) | |
| TATUM ) | |
| _____ ) | |

**MOTION TO DISMISS COUNT ONE FOR SELECTIVE PROSECUTION**

Thomas Tatum, by and through counsel, moves to dismiss Count One of the indictment.

As January 6 prosecutions enter the fourth year, the Government is still actively arresting peaceful protestors who were merely present on January 6 and charging them with multiple misdemeanors and in some cases felony charges, even as President Trump has announced that he will be looking into pardoning at least some if not all of these cases on his first day in office. On the other hand, the Government has not shown the same zeal in prosecuting protestors for Black Lives Matter or pro-Palestinian causes who engaged in similar or worse conduct than January 6 defendants. There is no justification for the unprecedented selective prosecution of January 6 defendants.

On April 12, 2024, Justices Thomas, Alito, and Gorsuch all expressed suspicion during oral argument that the Government has selectively applied felony charges to January 6 defendants where similarly situated defendants were not charged. On March 26, 2024, Judge Trevor McFadden of this Court admonished the Government for selectively targeting January 6 defendants "as a class." *United States v. Seefried*, 1:21-cr-00287 (TNM), 2024 WL 1299371, at *7 (D.D.C. Mar. 26, 2024). In that case, the Government openly admitted that they believe January 6 defendants should be treated more harshly than other similarly situated defendants

1

because of their alleged views regarding a "fiercely contested presidential election" and a "political maelstrom." *Id.* Judge McFadden rightly rejected this "fact-free approach." *Id.*

Mr. Tatum, like many January 6 defendants, has been charged with 18 U.S.C. 231(a)(3), a felony charge punishable with up to five years in prison. It is undisputed that the Government has selectively enforced this rarely applied statute against January 6 defendants. On February 23, 2023, pursuant to a court order, the Government released a spreadsheet setting forth all the cases from each of the 94 federal judicial districts in which the United States Attorney's Office chose to charge a defendant with 18 U.S.C. § 231(a)(3) between January 6, 2020, and January 6, 2022. *United States v. Mehaffie*, 1:21-cr-40, ECF Nos. 538-1, 538-2. The data reveal that in the two-year period, in the 93 federal districts other than the District of Columbia, the Government charged a total of 65 defendants with Section 231(a)(3). During that same time period, the Government charged 206 defendants with Section 231(a)(3) in the District of Columbia alone, all of them after January 6, 2021. In other words, after January 6, 2021, there were more than three times as many defendants charged with Section 231(a)(3) in the District of Columbia as there were in the rest of the country combined in a two-year period.

Since January 6, 2021, the Court of Appeals for the District of Columbia recognized a plausible allegation of selective prosecution of political protestors when compared with Black Lives Matter protestors who engaged in similar or worse conduct. *Frederick Douglass Found. v. Dist. of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023). The court held that a "selective enforcement claim has two elements: a plaintiff must demonstrate (1) he was similarly situated in material respects to other individuals against whom the law was not enforced, and (2) the selective enforcement infringed a constitutional right." *Frederick Douglass Found. v. Dist. of Columbia*, 82 F.4th 1122, 1136 (D.C. Cir. 2023). "A defendant may demonstrate that the administration of a

criminal law is 'directed so exclusively *against a particular class of persons* . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *United States v. Armstrong*, 517 U.S. 456, 464-65 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886) (emphasis added). As Judge McFadden stated, the Government considers January 6 defendants like Mr. Tatum to be a particular class deserving of a harsher enforcement of the criminal law. This is quintessential viewpoint discrimination under the *Frederick Douglass/Armstrong* standard.

There are thousands of similarly situated comparators that demonstrate the Government's selective prosecution of Mr. Tatum. Mr. Tatum is charged with 18 U.S.C. 231(a)(3), which according to the language of the statute can be brought against a person for committing or attempting to commit "any act" that obstructs, interferes, or impedes with a law enforcement officer responding to a "civil disorder." For example, in Minneapolis, after the infamous George Floyd riot of 2020, the Government only charged a single individual with 18 U.S.C. 231(a)(3). *Mehaffie*, 1:21-cr-40, ECF No. 538-1. During that riot, CNN provided live coverage as the cheering mob gathered and hurled fireworks at the Third Precinct Police Station as it burned in flames. CNN's law enforcement expert reported:

> Police had made a calculated decision that they are not going to enforce what we are seeing behind us. There is fire being set to the police department as you can hear what's going on behind us, there are fireworks going off, people climbing up the side of the building. They made the calculated decision that they are not going to stop people from doing that. I think the reason is they know that any type of police presence here is going to be met with aggression and agitation by this crowd that is clearly unhappy. We were just three blocks away at a financial institution that was on fire. The fire department was there but they were keeping a distance, they were not moving in to fight this fire, not wanting to put themselves in jeopardy or danger from this crowd that was clearly agitated. ...They are going to let this building burn…They know the decision right now is you lose a building, or you lose lives, potentially.[1]

---

[1] CNN reporter says 'zero' police presence as Minneapolis precinct burns - YouTube, www.youtube.com/watch?v=505lAvIGCj0.

The video shows that the Police were obstructed, impeded, and interfered with while responding to the civil disorder. If the January 6 standard of prosecution were applied equally, the Government would still be hunting down and arresting every individual in that crowd and charging them with 18 U.S.C. 231(a)(3). But a different standard was applied and the Government did not treat the participants in the riot in the same manner as they have treated Mr. Tatum and other January 6 defendants.

No district outside of the District of Columbia had more than 6 charges of civil disorder during the time period that saw Black Lives Matter riots in cities across the country, except for Oregon, where the riots lasted weeks and a federal courthouse was attacked and set on fire. The Government only charged 19 people with 18 U.S.C. 231(a)(3). An affidavit in support of one of the few rioters who were actually arrested in Portland (Exhibit A) shows how the riots in Portland were objectively worse than the January 6 incident by every metric.

> Since on or about May 26, 2020, protestors have gathered in Portland public areas to protest….Daily protests have regularly been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. Most violent of these impacting federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration and Customs Enforcement (ICE) was targeted by a Molotov Cocktail. The Mark O. Hatfield Courthouse has experienced significant damage to the facade and building fixtures during the six weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. The most recent repair estimate for the damage at the Mark O. Hatfiled Courthouse is in excess of $50,000. Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, US Marshals Service Deputies and other federal law enforcement officers working in the protection of the Mark O. Hatfield Courthouse have been subjected to threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

At its worst, the three hour incident on January 6 did not even approach what occurred in Portland, night after night for weeks. Yet the docket at the Mark O. Hatfield Courthouse is not filled with BLM cases the way that the Courthouse in D.C. has been occupied with January 6 cases for the last four years.

According to the affidavit supporting only misdemeanor charges, "on July 2, 2020, Rowan Olsen obstructed, impeded, and interfered with FPS and USMS during the performance of their official duties in protecting federal property, namely the Mark O. Hatfield Federal Courthouse." *Id.*

> Olsen entered onto the federal property and used his body to push on and hold a door being used by officers closed preventing the officers from exiting the building. These actions contributed to the glass door breaking, injuring a Deputy US Marshal, and compromised the security integrity of the Federal Courthouse. With the door broken, officers were subject to projectiles from demonstrators, to include a mortar firework which detonated amongst them. Officers used a riot shield and their bodies to block the open doorway for approximately six hours until the demonstrators were dispersed, and the broken door replaced with plywood.

Incredibly, Olsen was not one of the only 19 Portland rioters charged with obstructing law enforcement, even though he quite literally used his body to obstruct officers. Instead he was charged with three class C misdemeanors, all of which were ultimately voluntarily dismissed by the Government for no apparent reason. *Id.* It is no wonder Judge McFadden called the disparity between Portland and J6 "troubling." *United States v. Judd*, 579 F. Supp. 3d 1, 9 (D.D.C. 2021).

On July 11, 2020, two weeks into the Portland riots, Edward William Carubis assaulted federal law enforcement officers by shining a laser into the eyes of at least one federal officer, causing permanent damage to the officer's vision. Exhibit B. Carubis was not charged with 18 U.S.C. 231(a)(3), even though the FBI affidavit also expressly states that his actions impeded and interfered with police during the civil disorder. *Id.* Carubis spent three days in jail following his arrest, was offered and accepted a plea deal to a single misdemeanor, and was sentenced to

time served with no additional probation or supervised release.[2] If Carubis had committed the same exact act at the Capitol on January 6, 2021, there is no question that the prosecution would have been different, to say the least.

The Government's selective prosecution occurred all over the country, including the District of Columbia where, during a riot on June 19 and 20, 2020, Jason Charter was caught on video setting fire to two different historic monuments in a restricted area adjacent to the White House complex, just days after the President of the United States had to take shelter in the White House for the first time since 9/11. *United States v. Charter*, 1:20-cr-135, ECF 1-1, ECF 38. "Dozens of law enforcement officers from the United States Park Police and the Metropolitan Police Department [were required] to respond to Lafayette Park to secure the park and the safety of the persons and property therein." *Id.* Charter was ultimately charged with only misdemeanors.

Aside from the above examples, in each and every city where George Floyd/Black Lives Matter riots occurred, there were literally thousands of similarly situated comparators who were not arrested or charged at all, and were not investigated or surveilled. The inescapable conclusion is that if those defendants had committed the same acts on January 6, they would have been treated differently, just as if Mr. Tatum had committed the same acts that he is accused of during another riot where a different viewpoint was expressed, Mr. Tatum would not have been charged. Mr. Tatum is not being targeted for his individual conduct, but instead he is being targeted because he is viewed by the Government as part of a class of January 6 defendants who expressed a particular viewpoint. Accordingly, Count I should be dismissed.

---

[2] Man who pointed laser at officers outside Portland's federal courthouse gets time served (oregonlive.com),
https://www.oregonlive.com/crime/2023/01/man-who-pointed-laser-at-officers-outside-portlands-federal-courthouse-gets-time-served.html?outputType=amp

## CONCLUSION

For the reasons stated herein, Count I should be dismissed.

Dated: January 15, 2025                                     Respectfully submitted,

/s/ Jonathan Gross
Jonathan Gross, Esq.
BAR ID: MD 0126
2833 Smith Ave, Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being served on opposing counsel via email on

January 15, 2025

/s/ Jonathan Gross